[Cite as *State v. Belle*, 2019-Ohio-787.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 107046 and 107300**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**STACEY BELLE**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-17-614505-A and CR-17-617407-A

**BEFORE:** Sheehan, J., Jones, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** March 7, 2019

**ATTORNEY FOR APPELLANT**

Robert A. Dixon
4403 St. Clair Ave.
Cleveland, OH 44103


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Mary Weston
Melissa Riley
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113



MICHELLE J. SHEEHAN, J.:

{¶1} Stacey Belle was charged with rape and kidnapping in three cases, which were tried together to the bench.   The trial court found him guilty in two cases.   On appeal, Belle argues he was prejudiced by a joinder of the multiple cases for trial.   He also argues that his convictions are against the manifest weight of the evidence and that the trial court improperly admitted a SANE (Sexual Assault Nurse Examiner) nurse's testimony regarding trauma and memory.   Finding no merit to his claims, we affirm his convictions. However, we remand the matter to the trial court to clarify its sentencing entry nunc pro tunc regarding the life tail for Belle's convictions of the sexually violent predator specifications.

**Procedural History**

**{¶2}** In 2017, Belle was indicted in three separate cases. In Cuyahoga C.P. No. CR-17-614505-A, he was indicted for three counts of rape and one count of kidnapping involving B.W. The charges stemmed from an incident on July 4, 2012 (Case #1). In Cuyahoga C.P. No. CR-17-617407-A, Belle was indicted for one count of rape and one count of kidnapping involving C.E. The charges stemmed from an incident on May 21, 1997 (Case #2). In Cuyahoga C.P. No. CR-17-621821-A, he was indicted for rape and kidnapping involving S.C. in an August 14, 1998 incident (Case #3).

**{¶3}** Belle waived a jury trial. The three cases were tried to the bench in a joint trial. After trial, he was found not guilty in Case #3, but guilty in Cases #1 and #2. He appealed separately from the trial court's judgment in the two cases (8th Dist. Cuyahoga Nos. 107300 and 107046, respectively). We consolidated the appeals for briefing, hearing, and disposition.

**Trial Testimony**

**{¶4}** At the bench trial, the state presented the following testimony:

**1. Case #1 (July 4, 2012 incident involving B.W.)**

**{¶5}** B.W., now 53, testified that she was addicted to crack cocaine. On July 4, 2012, she had four or five dollars with her and was looking to buy drugs. She came upon Belle, someone she had smoked crack with in the past. He offered to help her buy drugs. As they walked up the steps of an abandoned building, he pushed her down and raped her, without using a condom. She asked him to stop, but he told her to shut up. He also hit her face several times. Her earrings came off during the attack and a lipstick also fell out of her pocket. Afterward, he grabbed her money and left.

**{¶6}** B.W. did not remember exactly what happened after the incident, but she recalled being at the hospital for a rape kit to be collected. She also vaguely remembered going back to

the scene of the incident with a police officer and found her earrings and lipstick. B.W. identified Belle in the courtroom as her assailant.

{¶7} A SANE nurse, Elizabeth Booth, testified regarding her treatment of B.W. and the administration of the rape kit. She testified extensively about the training she received to be a forensic nurse for victims of sexual assault, including the neurobiology of trauma and its effect on memory.

{¶8} A police officer who transported B.W.'s rape kit from the hospital to the police department also testified, as well as two DNA analysts, who testified about their analysis of B.W.'s rape kit.

{¶9} Although Belle was charged with three counts of rape (vaginal rape, fellatio, and cunnilingus) and one count of kidnapping, he was found guilty of one count of rape (vaginal rape) and one count of kidnapping, both with a sexually violent predator specification.

**2. Case #2 (May 21, 1997 incident involving C.E.)**

{¶10} C.E., now 58, testified that she became addicted to crack cocaine after college and worked as a prostitute to support her drug addiction. On May 21, 1997, she got high and, looking for more money to buy drugs, was walking the street on the east side of Cleveland to find a man who would pay her in exchange for sex. A man appeared and told her to follow him. They climbed through a window, down to the basement of an abandoned apartment building across the street from John Adams High School. Once there, he used some crack cocaine and "went crazy," rushing toward her. She tried to fight him off. When she slipped, he fell on top of her, breaking her knee. She stopped fighting when he grabbed a pole or pipe because she became afraid he would hurt her with it. He raped her vaginally and forced fellatio on her. She defecated on herself during the attack. After he left, she climbed out of the window.

While walking, she came across another man, who gave her crack cocaine in exchange for sex. The second man used a condom, however. C.E. then went to a hospital to treat her broken knee and had a rape kit collected. When a detective came to her parents' home to talk to her, she did not want to cooperate for fear that her parents would find out about her drug addiction and prostitution. In 2006, another detective contacted her and told her they had a DNA lead, but she signed a "no prosecution" form because she had asked God to help her forgive her assailant. Years later, a third detective contacted her and asked her to identify the assailant from a photo lineup but she was unable to identify the person that assaulted her.

{¶11} The nurse who treated C.E. at the hospital testified C.E. reported that her attacker forced fellatio on her and penetrated her vagina, and threatened to beat her with a pole. C.E. also mentioned she defecated on herself during the attack. C.E.'s medical record relating to the incident was submitted as an exhibit.

{¶12} The other witnesses in this case included the detective who took possession of the rape kit and transported it to the police station; the detective who went to C.E.'s residence to interview her in 1997; a forensic scientist who performed the DNA analysis of C.E.'s rape kit; and the detective who contacted C.E. in 2006.

{¶13} In Case #2, Belle was charged with one count of rape and one count of kidnapping. After trial, he was found guilty of both counts, each with a sexually violent predator specification.

**3. Case #3 (August 14, 1998 incident involving S.C.)**

{¶14} In Case #3, the alleged victim, S.C., did not testify. Instead, an emergency room doctor testified about the hospital record of S.C., who reported being assaulted after having a beer with a man. The man asked for sex, then struck her and raped her vaginally and also forced fellatio on her. Others who testified included a nurse who assisted in the collection of the rape kit, a detective who spoke to S.C. in response to her report of rape, and a forensic scientist who analyzed S.C.'s rape kit. After trial, the court acquitted Belle of all charges relating to S.C.

{¶15} On appeal, Belle assigns several errors concerning his convictions. The five assignments of error state:

> I. The lower court erred and denied the appellant due process of law in consolidating separate indictments for separate events in absence of a motion to join or any findings pursuant to Crim.[R.]13.
>
> II. The verdicts below were against the manifest weight of the evidence.
>
> III. The verdicts finding the appellant guilty of the sexually violent predator specifications were not supported by sufficient evidence in violation of appellant's right to due process of law.
>
> IV. The appellant was denied due process of law and a fair trial when the court permitted expert psychological testimony from a nurse without qualification as an expert in that area and without expert testimony as required by Crim.R. 16.
>
> V. The appellant was denied his Sixth Amendment right to effective assistance of counsel.

**Joinder**

{¶16} Under the first assignment of error, Belle argues the trial court erred in consolidating the multiple cases for trial when the state never moved for joinder and the court made no findings under Crim.R. 13 or Crim.R. 8.

**{¶17}** Crim.R. 13 permits a joint trial for multiple indictments. It states: "The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information." In turn, Crim.R. 8(A) governs the joinder of offenses in a single indictment. Pursuant to Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

**{¶18}** If the requirements of Crim.R. 8(A) are satisfied, joining multiple offenses in a single trial is favored because it conserves judicial resources, lessens the inconvenience to witnesses, and minimizes the possibility of inconsistent results before different juries. *State v. Anderson*, 2017-Ohio-931, 86 N.E.3d 870, ¶ 23 (8th Dist.), citing *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), *State v. Schiebel*, 55 Ohio St.3d 71, 86-87, 564 N.E.2d 54 (1990), and *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992).

**{¶19}** Under Crim.R. 13, a trial court may join the charges sua sponte if the original indictment could have been joined under Crim.R. 8(A). *State v. Hill*, 8th Dist. Cuyahoga No. 95379, 2011-Ohio-2523, ¶ 11, citing *State v. Moore*, 12th Dist. Madison No. CA92-12-034, 1994 Ohio App. LEXIS 329 (Jan. 31, 1994), and *State v. VanHorn*, 6th Dist. Lucas No. L-98-1171, 2000 Ohio App. LEXIS 738 (Mar. 3, 2000).

**{¶20}** A defendant, however, is permitted to move to sever charges under Crim.R. 14 if it appears that the defendant may be prejudiced by a joinder of offenses. *State v. Wilson*, 2016-Ohio-2718, 51 N.E.3d 676 (8th Dist.), ¶ 39, citing *State v. Lott*, 51 Ohio St.3d 160, 555

N.E.2d 293 (1990). The defendant bears the burden of proving prejudice. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29.

{¶21} When a defendant claims severance is necessary because he or she may be prejudiced by a joinder, the state can refute under two methods.

> Under the first method, the state must show that the evidence from the other case could have been introduced pursuant to the "other acts" test of Evid.R. 404(B); under the second method (referred to as the "joinder test"), the state does not have to meet the stricter "other acts" admissibility test but only need to show the evidence of each crime joined at trial is "simple and direct."

*Anderson*, 2017-Ohio-931, 86 N.E.3d 870, at ¶ 25, citing *Lott* at 163.

{¶22} On appeal, Belle claims the trial court erred by consolidating the multiple indictments for trial where the state never filed a motion to consolidate the indictments. This claim lacks merit because a trial court can order a joint trial sua sponte without the state's motion for a joint trial, provided the requirements of Crim.R. 8(A) are satisfied. *Hill*, 8th Dist. Cuyahoga No. 95379, 2011-Ohio-2523, at ¶ 19.

{¶23} Our review of the record shows the charges against Belle in the three cases were "of the same or similar character" under Crim.R. 8(A). In two cases, the victims were both drug addicts who were looking to obtain drugs before the sexual assault happened. In both cases, Belle either used violence or threatened to use violence to facilitate the assault. In the third case, Belle offered alcohol to the alleged victim and also struck the victim during the sexual assault. Joinder was proper under Evid.R. 8(A) because the crimes were related in character and manner. *See, e.g.*, *State v. Bell*, 7th Dist. Mahoning No. 06-MA-189, 2008-Ohio-3959, ¶ 18 (joinder under Crim.R. 8(A) was proper because the offenses charged — rape or attempted rape involving multiple victims — were the same or similar in character); *Wilson*, 2016-Ohio-2718,

51 N.E.3d 676 (defendant's rape offenses targeting young African-American women alone on the street and driving them to an isolated area were of similar character under Crim.R. 8(A)).

**{¶24}** Belle did not move for severance under Crim.R. 14. Even if he did, the state could refute his claim of prejudice by meeting the "simple and direct" test ("the joinder test") set forth in *Lott*. "[W]hen simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." *Lott,* 51 Ohio St.3d at 163, 555 N.E.2d 293. *See also State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991) (if the state can meet the "joinder test," it need not meet the stricter other-acts test).

**{¶25}** "Simple and direct" evidence means the evidence of each crime is "so clearly separate and distinct as to prevent the jury from considering evidence of [some crimes] as corroborative of the other." *State v. Quinones*, 11th Dist. Lake No. 2003-L-015, 2005-Ohio-6576, ¶ 48. The purpose of the "joinder test" is to prevent the finder of fact from confusing the offenses. *State v. Varney*, 4th Dist. Hocking No. 07CA18/07AP18, 2008-Ohio-5283. Evidence is "simple and direct" if the trier of fact is capable of segregating the proof required for each offense. *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, 937 N.E.2d 136, ¶ 39 (10th Dist.).

**{¶26}** Here, the victims B.W. and C.E. testified to the events in 2012 and 1997 occurring in different locations. Their testimony was straight-forward, and there was little danger that the court, as the trier of fact in this case, would confuse the evidence or improperly consider the evidence of each victim's accusations as corroborative of the others. Indeed, although Belle was also charged with raping a third victim, S.C., the trial court found him not guilty of any charges involving S.C. This reflects the trial court's ability to segregate the proof required in

each case. *See State v. Lee*, 8th Dist. Cuyahoga No. 104682, 2017-Ohio-1449, ¶ 19 (the evidence was "simple and direct" as reflected by the jury acquitting the defendant of offenses relating to one of the several shootings); *State v. Bonneau*, 8th Dist. Cuyahoga No. 97565, 2012-Ohio-3258, ¶ 22 (the jury's not guilty verdict as to the counts relating to one victim and its guilty verdicts as to the counts relating to another demonstrated that the jury was able to separate the evidence and considered each victim separately); *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 95 (8th Dist.) (defendant could not show prejudice from joinder as he was acquitted of one charge); and *State v. Banks*, 2015-Ohio-5413, 56 N.E.3d 289, ¶ 66-68 (8th Dist.) (defendant was unable to show prejudice for the court's refusal to sever his offenses because he was acquitted of some charges). The first assignment of error lacks merit.

**Sufficiency and Manifest Weight of the Evidence**

{¶27} Under the second and third assignments of error, Belle argues his conviction of the sexually violent predator specification is supported by insufficient evidence and against the manifest weight of the evidence. He also argues his convictions of rape and kidnapping are against the manifest weight of the evidence.

{¶28} When reviewing a challenge to the sufficiency of the evidence, we review the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if

believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶29} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. *Id.* Unlike a claim that the evidence is insufficient to support a conviction, which raises a question of law, manifest-weight challenges raise factual issues. When a defendant argues his or her conviction is against the manifest weight of the evidence, the court,

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). When we examine witness credibility, we must be mindful that "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). The trier of fact "is in the best position to observe the witnesses' demeanor, voice inflection, and mannerisms in determining each witness's credibility." *State v. Hughes*, 8th Dist. Cuyahoga No. 81768, 2003-Ohio-2307, ¶ 26. Furthermore, a trier of fact is free to believe all, some, or none of the testimony of each witness appearing before it. *Iler v. Wright*, 8th Dist. Cuyahoga No. 80555, 2002-Ohio-4279, ¶ 25.

**Manifest-Weight Claim regarding Rape and Kidnapping**

{¶30} Belle does not claim the evidence is insufficient to convict him of rape and kidnapping. He argues, however, his convictions are against the manifest weight of the evidence.

{¶31} Belle claims the evidence shows both instances of sexual conduct were consensual. Regarding B.W., he argues her claim of forced sexual conduct was not credible because she did not cooperate with the police initially and she admitted she would trade sex for drugs. Regarding C.E., Belle similarly argues that her signing of a "no prosecution" form in 2006 and her working as a prostitute to support her drug habit call into question her claim of nonconsensual sex.

{¶32} In evaluating a manifest-weight claim, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Both victims here testified at length at trial. The assessment of their credibility is a matter for the trier of fact, and we will not substitute our judgment for that of the finder of fact. Having reviewed the record, we cannot say the trial court, as the trier of fact, lost its way in finding the two victims credible in their account of the incidents and convicting Belle of rape and kidnapping.

**Sexually Violent Predator Specification**

{¶33} Belle claims the guilty finding in the sexually violent predator specifications was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶34} R.C. 2971.01(H)(1) defines a "sexually violent predator" as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." In other words, three factors must exist before a

defendant may be labeled as a sexually violent predator: (1) the offense occurred on or after January 1, 1997; (2) the defendant commits a sexually violent offense; and (3) it is likely that the defendant will engage in at least one more sexually violent offense in the future.    Thus, the key inquiry for finding a defendant to be a sexually violent predator is whether the person is likely to engage in sexually violent offenses in the future.   For that determination, R.C. 2971.01(H)(2) provides the following:

> (2)    For purposes of division (H)(1) of this section, any of the following factors *may* be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:
>
> (a)    The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.
>
> (b)    The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.
>
> (c)    Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.
>
> (d)    The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.
>
> (e)    The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.
>
> (f)    *Any other relevant evidence.*

(Emphasis added.)

**{¶35}** Belle argues that his sexually violent predator specification convictions are not supported by sufficient evidence because neither R.C. 2971.01(H)(2)(a) nor any other factors enumerated in R.C. 2971.01(H)(2) apply.

**{¶36}** Unlike R.C. 2971.01(H)(1), which requires the existence of the three factors, R.C. 2971.01(H)(2) merely contains factors that *may* be considered as evidence indicating a likelihood that the person will engage in a sexually violent offense in the future. *State v. Wooten*, 9th Dist. Lorain No. 13CA010510, 2014-Ohio-3980, ¶ 36. R.C. 2971.01(H)(2) provides a nonexclusive list of factors that the trial court "may" use in determining that a defendant is likely to engage in sexually violent offenses in the future, and the trial court is free to consider "any other relevant evidence" as provided in the catchall provision of R.C. 2971.01(H)(2)(f). *State v. T.E.H.*, 10th Dist. Franklin Nos. 16AP-384, 16AP-385, and 16AP-386, 2017-Ohio-4140, ¶ 72, citing *State v. Sylvester*, 8th Dist. Cuyahoga No. 103841, 2016-Ohio-5710, ¶ 12-13.

**{¶37}** The state points to the evidence presented at trial showing that Belle specifically targeted women addicted to drugs and willing to trade sexual conduct for money or drugs so that he could conceal his sexual assaults on these vulnerable women. The state also points to the serious injury sustained by C.E. As such, there was compelling evidence in the record for the trial court to find that Belle is likely to engage in a sexually violent offense in the future under R.C. 2971.01(H)(2). Accordingly, his conviction for the sexually violent predator specifications was supported by sufficient evidence and not against the manifest weight of the evidence.

**{¶38}** For the foregoing reasons, the second and third assignments of error are without merit.

**Admissibility of SANE Nurse's Testimony**

{¶39} The fourth assignment of error relates to SANE nurse Booth's testimony. Nurse Booth personally treated B.W. and administered the rape kit. Belle claims Nurse Booth testified as an "expert" regarding the effect of trauma on a victim's memory without being qualified as an expert pursuant to Evid.R. 702. He points us to two occasions during her testimony where she talked about the effect of trauma on the memory of a sexual assault victim. In both instances, her testimony was general in character, not pertaining to B.W.

{¶40} On the first occasion, Nurse Booth testified about her training regarding treating patients complaining of sexual assaults. She explained that as part of her certification, she studied neurobiology of trauma, and she talked about what she learned as to the effect of trauma on a person's memory.

{¶41} On the second occasion, after Nurse Booth testified regarding B.W.'s medical record, which showed B.W. indicated the sexual assault included vaginal rape, fellatio, and cunnilingus, Booth testified as follows:

Q. *Throughout your experience and based on your training and all of your experience* in treating patients who complain of sexual assaults * * * *have you had the experience* of speaking with a sexual assault patient who doesn't remember one of the sexual acts that occurred to them?

A. Yes. Commonly.

Q. You would say that's common?

A. Yes.

Q. Based upon your training in the neurobiology of trauma do you know why that might be true?

[Defense counsel]: Objection.

The Court: The objection [is] overruled.

Q. Go ahead.

A.    Yes. Again, because of the stress hormones that are released and that fight or flight response kicks in so memory collection that is being processed by the brain is secondary.   It's to get out of that situation is the body's first response.

Q.    *Have you had the experience through the course of your career and training* in all of your experience where a woman might remember it an hour or two after assault but might not remember it five, six, 20 years later?

A.    Yes.

[Defense counsel]:    Objection.

The Court:                    [The] [o]bjection is overruled.

Q.    Again, what might the reason be based on your training and experience?

A.    At the time, sometimes the memory's difficult, so a lot of times * * * it may be fragmented. * * *   Later, when the stress hormones level off, the brain is able to process more. They may have more recollection memories that they are able to revive.

Q.    I guess the question is would it surprise you if they had forgotten things years later?

A.    It can go both ways as well.   Again, it's a traumatic event that patients don't want to relive as well.

(Emphasis added.)

**{¶42}**   Belle's trial counsel did not object on the first occasion but did preserve the alleged error by his objection on the second occasion.   If a defendant has preserved an error in the trial court, we may review it under the harmless error standard in Crim.R. 52(A).   *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15.   Crim.R. 52(A) defines a harmless error as "any error, defect, irregularity, or variance which does not affect substantial rights."

**{¶43}** On the other hand, when a defendant fails to preserve an error, we review it for plain error. Under Crim.R. 52(B), plain errors are any "errors or defects affecting substantial rights [and] may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶44}** Having reviewed the transcript, we find no error in the trial court's admission of the SANE nurse's testimony on either occasion. Regarding the nurse's testimony about what she learned from studying the neurobiology of trauma on the brain, Belle's counsel did not object to this testimony, and therefore, we review the claim under plain error. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 108. Our review of the testimony reflects the SANE nurse was simply testifying about the training she received to become certified as a forensic nurse specializing in patients of sexual assault, and what she learned from the training. She was not giving expert testimony here. There is no error, plain or otherwise.

**{¶45}** Regarding the second occasion when the state asked Nurse Booth about her experience with sexual assault patients as to whether they may not remember the sexual acts, the claimed error was objected to and therefore preserved, but we find no error either.

**{¶46}** Evid.R. 702 governs the admissibility of expert testimony. It states that a witness may testify as an expert if all of the following apply:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill,

experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable, scientific, technical, or other specialized information. * * *

**{¶47}** The state argues that the SANE nurse testified as a lay witness. Upon our review of the transcript, we agree with the state's characterization of the nurse's testimony. A lay witness is permitted to give opinion testimony under Evid.R. 701, which states:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

**{¶48}** Here, Nurse Booth was asked, based on her experience with sexual assault patients, whether they always remembered the sexual acts. The state had laid a foundation demonstrating that she had a sufficient amount of experience and training and her testimony here was based on her personal knowledge and experience. *State v. Andre*, 8th Dist. Cuyahoga No. 101023, 2015-Ohio-17, ¶ 25 (opinion by a lay witness should be rationally based on firsthand perceptions). As such, Nurse Booth's testimony fell within the ambit of Evid.R. 701's requirement that the lay opinion be rationally based on firsthand observations and helpful in determining a fact in issue. The fourth assignment of error is overruled.

**Ineffective Assistance of Counsel**

{¶49} To establish a claim of ineffective assistance of counsel, an appellant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). And counsel's performance will not be deemed ineffective unless and until the performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *State v. Iacona*, 93 Ohio St.3d 83, 105, 2001-Ohio-1292, 752 N.E.2d 937.

{¶50} Belle claims his trial counsel was ineffective for failing to object to joinder and to the SANE nurse's testimony. As we have explained above, even if his counsel had moved for severance under Crim.R. 14, the state would be able to refute a claim of prejudice. Regarding the SANE nurse's testimony, we have concluded that her testimony was admissible as lay testimony under Evid.R. 701. His trial counsel was not required to perform a vain act in order to avoid an ineffective assistance claim. *State v. Caldwell*, 8th Dist. Cuyahoga No. 80556, 2002-Ohio-4911, ¶ 37. Belle fails to demonstrate the deficiency of his counsel's performance or any prejudice resulting from that performance. The fifth assignment of error is without merit.

{¶51} Appellant's convictions are affirmed. However, we remand the matter to the trial court to clarify its sentence entry nunc pro tunc. For his convictions of rape and kidnapping in Case #1 and rape and kidnapping in Case #2, Belle was sentenced to a concurrent

term of nine years for rape and kidnapping in each case, with the two terms to be served consecutively. Although at sentencing the trial court imposed a life tail to his sentence in each case for the sexually violent predator specifications pursuant to R.C. 2971.03, thus giving him an aggregate sentence of 18 years to life, the sentencing entry did not clearly reflect that the life tail was imposed for Belle's convictions of the sexually violent predator specifications. On remand, the trial court is to clarify its journal entry nunc pro tunc.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for issuance of a nunc pro tunc journal entry and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

LARRY A. JONES, SR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR