[Cite as *Bohl v. Aluminum Co. of Am., Inc.*, 2020-Ohio-2824.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

DIANE BOHL                                          :

    Plaintiff-Appellant,            :

                           No. 108584

    v.                              :

ALUMINUM COMPANY                                    :
OF AMERICA, INC., ET AL.,

                                :

    Defendants-Appellees.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 7, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-896775

---

### *Appearances:*

Shapiro, Marnecheck & Palnik, Matthew A. Palnik, and Elizabeth M. Laporte, *for appellant*.

Frantz Ward L.L.P., Daniel Ward, Angela D. Lydon, Maris McNamara, Michael C. Nunnari, and Marc Sanchez, *for appellee* Arconic, f.k.a. Aluminum Company of America.

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Plaintiff-appellant, Diane Bohl ("Bohl"), appeals a judgment rendered following a jury trial in favor of defendants-appellees, Arconic, f.k.a.

Aluminum Company of America, Inc. ("ALCOA"), and Sarah Morrison, administrator of the Ohio Bureau of Workers' Compensation (collectively "Arconic"). Bohl claims three errors:

> 1. The trial court erred by denying plaintiff-appellant's motion for separation of witnesses and permitting defendant-appellee's expert to read the transcript of plaintiff's expert, Dr. William Stanfield, in preparation for his own trial testimony.
>
> 2. The trial court erred by denying plaintiff-appellant's motion in limine regarding the alleged medical records of Dr. Muhammed Chohan as said records are hearsay pursuant to the Evid.R. 801, do not fall into any hearsay exception pursuant to Evid.R. 803, were not properly authenticated, and were produced to plaintiff only after plaintiff's medical expert trial deposition.
>
> 3. The trial court erred by denying plaintiff-appellant's objection to Dr. Dennis Glazer's trial testimony and motion to exclude said testimony because Dr. Glazer failed to comply with a subpoena and testified in violation of Local Rule 21.1 and Civ.R. 26.

{¶ 2} We find no merit to the appeal and affirm.

## I. Facts and Procedural History

{¶ 3} Bohl was employed at ALCOA, on August 23, 2014, when she tripped and fell onto her knees. Bohl, who had a history of arthritis in her knees, sought treatment for injuries she sustained as a result of her fall. She also submitted a claim for workplace injuries with the Ohio Industrial Commission, and the claim was initially accepted for bilateral knee contusions. Bohl later sought an additional allowance for substantial aggravation of pre-existing degenerative joint disease in her left knee. The Ohio Industrial Commission denied the claim, and Bohl appealed to the Cuyahoga County Court of Common Pleas.

{¶ 4} Bohl testified at trial that she has been treating with her family doctor, Dr. Muhammed Chohan ("Dr. Chohan"), for osteoarthritis in her left knee since 1996. (Tr. 220.) In addition to treating with her family doctor, Bohl treated with Dr. William Stanfield ("Dr. Stanfield") for osteoarthritis in both her knees for a period of time beginning in October 2006. Dr. Stanfield performed two surgeries to her right knee, including a knee replacement surgery in 2008. (Tr. 178-179.) Following the surgeries, Bohl continued to treat with Dr. Chohan for osteoarthritis in her left knee and did not see Dr. Stanfield again until after the work-related accident on August 23, 2014.

{¶ 5} Meanwhile, in November 2012, Dr. Chohan ordered X-rays of Bohl's left knee. Based on the X-ray report, Bohl was diagnosed with "severe tricompartment osteoarthritis in the left knee," which was consistent with notes Dr. Chohan made in Bohl's medical records in 2010 and 2012. (Tr. 267, 294; exhibit E.) Eventually, in June 2014, Bohl sought treatment for osteoarthritis in her left knee with Dr. Alfred Serna, an orthopedic surgeon at the Cleveland Clinic. (Tr. 219, 227, 267.) Dr. Serna noted that Bohl had a diminished range of motion; she had flexion to 110 degrees and extension to 10 degrees. (Tr. 219.) Based on an X-ray taken on June 24, 2014, Bohl was diagnosed with "severe medial compartment osteoarthritis, complete collapse of the compartment." Dr. Serna discussed the possibility of a total knee replacement of the left knee at the June 2014 visit and advised Bohl to follow up in six weeks.

{¶ 6} Less than two months later, Bohl tripped and fell onto her knees at work. Two days after the fall, on August 25, 2014, Bohl saw Dr. Marsh, one of Dr. Stanfield's partners, for knee pain. (Stanfield trial depo. at 30.) Dr. Marsh noted that Bohl had swelling in the left knee, medial joint line tenderness, and a diminished range of motion. Bohl followed up with Dr. Stanfield in September 2014. Dr. Stanfield noted that Bohl continued to have swelling in her left knee. Dr. Stanfield also found that Bohl's left knee had flexion to 110 degrees and extension to 10 degrees. (Plaintiff's exhibit No. 1, note dated Sept. 23, 2014.) These findings were consistent with the findings made by Dr. Serna in June 2014.

{¶ 7} Dr. Stanfield testified at trial as Bohl's medical expert. He testified that although Bohl had preexisting arthritis, her arthritic condition was "substantially aggravated" when she fell on her knees at work. (Stanfield trial depo. at 51.) When asked how he reached this conclusion, Stanfield explained:

> Her symptoms from her arthritis were stable until that injury occurred, after which it progressively got worse over time to the point where we weren't able to manage it with the modalities we had used previously.

(Stanfield trial depo. at 53.)

{¶ 8} When asked what objective evidence supported his opinion, Dr. Stanfield stated:

> Her persistent limited mobility of the knee; persistent signs of inflammation in the knee with swelling and tenderness; as well as her progression of her arthritis on x-ray.

(Stanfield trial depo. at 53.)

**{¶ 9}** Dr. Stanfield testified that Bohl stopped seeing him for treatment following the surgeries to her right knee in 2009, and that she did not visit his office again until September 2014, after her work-related injury on August 23, 2014. (Stanfield trial depo. at 30.) On cross-examination, Dr. Stanfield saw for the first time Dr. Serna and Dr. Chohan's records concerning degenerative joint disease in the left knee. Confronted with these records, Dr. Stanfield admitted that a radiology report of the X-rays ordered by Dr. Serna in November 2012, found that Bohl's left knee had "severe tricompartment osteoarthritis." (Stanfield trial depo. at 68.) He also conceded that Dr. Chohan diagnosed Bohl as having "severe arthritis of the left knee" in 2012. (Stanfield trial depo. at 72.) And Dr. Stanfield acknowledged that approximately two months before Bohl's fall at work, another X-ray report ordered by Dr. Serna found that Bohl had "severe medial compartment osteoarthritis of the left knee" and "patellofemoral arthralgia of the left knee." (Stanfield trial depo. at 75-76.) Dr. Stanfield further recognized that Dr. Serna discussed a potential knee replacement surgery with Bohl 59 days before her fall on August 23, 2014. (Stanfield trial depo. at 76.)

**{¶ 10}** Dr. Dennis Glazer, Arconic's medical expert, reviewed all of Bohl's medical records from various medical providers. He testified that he compared the X-ray images from June 2014, with medical records and X-ray images taken after the August 2014 workplace incident and found no changes in Bohl's degenerative joint disease. (Glazer trial depo. tr. at 35-36, 54-59, 78-79.) Dr. Glazer also found that Bohl reported to Dr. Serna in June 2014, that her knee pain on the visual analog

scale was nine out of ten, where zero is no pain and "10 is a pain that is so bad that if it's not relieved you would commit suicide." (Glazer trial depo. tr. at 56.)

{¶ 11} Based on Dr. Glazer's comparison of the X-rays taken before and after Bohl's workplace accident as well as Dr. Serna's notes and recommendation of a total knee replacement, he opined that, in his expert opinion, there was no evidence that Bohl's fall at work on August 23, 2014, substantially aggravated her preexisting degenerative joint disease of the left knee. (Glazer trial depo. tr. at 38.)

{¶ 12} The jury returned a verdict in favor of Arconic and denied Bohl's claim for additional allowance for substantial aggravation of preexisting-degenerative joint disease in her left knee. Bohl now appeals the trial court's judgment.

## II. Law and Analysis

### A. Separation of Witnesses

{¶ 13} In the first assignment of error, Bohl argues the trial court erred in denying her motion for separation of witnesses and allowing Arconic's expert, Dr. Glazer, to read the trial transcript of Bohl's expert, Dr. Stanfield, in preparation for his own trial testimony.

{¶ 14} The separation of witnesses is a matter within the discretion of the trial court. *Orange Village v. Tri-Star Dev. Co.*, 8th Dist. Cuyahoga No. 77358, 2001 Ohio App. LEXIS 1163 (Mar. 15, 2001), citing *Oakwood v. Makar*, 11 Ohio App.3d 46, 48, 463 N.E.2d 61 (8th Dist.1983). A trial court abuses its discretion if its decision is unreasonable, arbitrary or unconscionable. *State ex rel DiFranco v. S.*

*Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 13. An abuse of discretion may also be found where the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Ockunzzi v. Smith*, 8th Dist. Cuyahoga No. 102347, 2015-Ohio-2708, ¶ 9. Under this highly deferential standard of review, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

{¶ 15} Evid.R. 615 governs the separation of witnesses, and provides that, at the request of a party, "the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Evid.R. 615(A). Evid.R. 615(B) provides a list of exceptions to the rule and states, in relevant part, that "[t]his rule does not authorize exclusion of any of * * * a person whose presence is shown by a party to be essential to the presentation of the party's cause."

{¶ 16} In response to Bohl's motion for separation of witnesses, Arconic argued it was "essential" that its medical expert be permitted to review the trial testimony of Bohl's medical expert before he, himself, testified because Bohl failed to produce an expert report from her medical expert in response to Arconic's discovery requests. Therefore, Arconic asserted, its expert needed to review the expert opinions of Bohl's medical expert in order to prepare a defense. In denying the motion for separation of witnesses, the trial court distinguished the need for separating fact witnesses, "who are precluded from shaping their testimony based

upon prior testimony" from expert witnesses, who are generally informed of the opposing expert's opinions prior to trial.

{¶ 17} Loc.R. 21.1 of the Cuyahoga County Court of Common Pleas, General Division, provides that parties must exchange reports of medical and other expert witnesses expected to testify in advance of trial. Loc.R. 21.1(A). "A party may not call a non-party expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel." Loc.R. 21.1(B). And counsel must "take reasonable measures * * * to insure that each report adequately sets forth the non-party expert's opinion." Loc.R. 21.1(B). Furthermore, the expert is not "permitted to testify or provide opinions on issues not raised in his report." Loc.R. 21.1(B). Therefore, the exchange of expert reports furnishes each side with knowledge of the other side's expert opinions in advance of trial and provides an outline of each expert's expected testimony.

{¶ 18} The trial court normally sets expert report deadlines in a pretrial discovery schedule. And since, under Loc.R. 21.1(B), an expert is not permitted to testify unless a written report of the expert's opinions has been provided to opposing counsel, the court could exclude an expert from testifying if the party calling the expert fails to provide the expert's report to opposing counsel by the expert report deadline.

{¶ 19} The trial court never set discovery or expert report deadlines in this case. Arconic nevertheless submitted discovery requests to Bohl, including the following request for production of an expert report from Bohl's medical experts:

If any of your expert witnesses has prepared a written report concerning your injury which you claim to be the basis of this lawsuit, please state the name of the expert, the date of the report, and produce a copy of each such report with your responses to these interrogatories.

(Plaintiff's responses to defendant Arconic, f.k.a., Aluminum Company of America's first set of interrogatories and requests for production of documents to plaintiff Diane Bohl attached to defendant Arconic's brief in opposition to plaintiff's motion to reconsider plaintiff's motion for separation of witnesses.)

{¶ 20} Instead of providing an expert report containing the expert's opinions regarding the proximate cause of Bohl's degenerative joint disease, Bohl provided a medical office note dated September 23, 2014, summarizing the findings of a physical examination of Bohl's left knee and the recommended treatment plan. Loc.R. 21.1(C) provides that although "[a]ll non-party experts must submit reports," an office visit or hospital note may satisfy the expert report requirement, but only if the party was "unable to obtain a written report from a non-party expert." Moreover, Loc.R. 21.1 provides that in order for an office visit note to satisfy the requirement of a written expert report, "the party must demonstrate that a good[-] faith effort was made to obtain the report," and "the party must advise the court and opposing counsel of the name address of the expert[,] the subject of the expert's expertise together with is qualifications and a detailed summary of his testimony."

{¶ 21} Nothing in the record suggests that Bohl was unable to obtain a written expert report from Dr. Stanfield, and there is no record of good-faith efforts made by Bohl's counsel to obtain a timely expert medical report. The office visit note

Bohl provided in lieu of an expert report does not discuss the cause of Bohl's degenerative joint disease. Indeed, the office visit note does not mention Bohl's fall at work at all. As the trial court observed, the office visit note of Bohl's September 23, 2014 visit "provide[s] defendant's expert with less information than a typical expert report." (Journal entry dated Mar. 20, 2019.) In other words, the office note submitted in lieu of an expert report failed to meet the requirements set forth in Loc.R. 21.1 to qualify as an expert report.

{¶ 22} Having failed to produce an expert report as required by Loc.R. 21.1, the trial court could have excluded Bohl's expert from testifying at trial. Without expert testimony, Bohl would have had no evidence to establish that she sustained substantial aggravation of her preexisting-degenerative joint disease as a proximate result of her work-related accident on August 23, 2014. She would have failed to meet her burden of production, and the defense would be entitled to a directed verdict. Yet, to allow Bohl's expert to provide expert opinions without first providing a written report of those opinions to defense counsel would have violated Loc.R. 21.1 and would have been highly prejudicial to the defense. *Gridiron v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 107009, 2019-Ohio-167, ¶ 25 ("The primary purpose of Loc.R. 21.1 is to avoid prejudicial surprise * * *."); *Peffer v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450, ¶ 30 (The purpose of Loc.R. 21.1 is "to prevent surprise at trial and to give the opposing party an opportunity to properly cross-examine the expert.").

{¶ 23} The trial court avoided the prejudice to the defense caused by Bohl's failure to provide an expert report by allowing Arconic's defense expert to read the trial testimony of Bohl's expert and discern his opinions before testifying at trial. The prejudice to Bohl was minimal since she created this problem by failing to provide a written expert report to defense counsel in advance of trial. And since Arconic's expert's testimony was limited to expert opinions as to the proximate cause of Bohl's degenerative joint disease, the testimony would not have been different if Glazer reviewed Stanfield's expert report instead of reviewing his trial testimony.

{¶ 24} The nature of expert testimony is different from fact witness testimony due to the exchange of expert reports. Indeed, Evid.R. 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert *or admitted in evidence* at the hearing." (Emphasis added.) Evid.R. 703 contemplates occasions when an expert may be required to base his or her opinion on facts or data admitted in evidence, depending on the facts and circumstances of the case.

{¶ 25} The trial court's decision to allow Arconic's expert to review the trial testimony of Bohl's expert before he, himself, testified prevented the prejudice to the defense caused by Bohl's failure to produce a timely expert report. But it was not an ideal solution. Loc.R. 21.1 exists to prevent the kinds of problems that occurred in this case by setting forth the procedure for the timely exchange of expert reports and the penalty for failure to provide a written expert report. We, therefore, do not find

any abuse of discretion in the court's denial of Bohl's motion for separation of witnesses under the particular facts of this case.

{¶ 26} The first assignment of error is overruled.

## B. Dr. Chohan's Medical Records

{¶ 27} In the second assignment of error, Bohl argues the trial court erred in denying her motion in limine to exclude the medical records of her primary care physician, Dr. Chohan. She contends the records were hearsay, did not fall within any hearsay exception, and were not properly authenticated.

{¶ 28} Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within one of the exceptions listed in Evid.R. 803. *State v. DeMarco*, 31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987).

{¶ 29} Dr. Chohan did not testify at trial and was not subject to cross-examination. Arconic presented medical records prepared by Dr. Chohan in order to establish certain facts asserted therein, i.e., that Bohl's degenerative joint disease had progressed after she last treated with Dr. Stanfield in 2009, and that it had completely degenerated before her work-related incident on August 23, 2014. Therefore, Dr. Chohan's records are hearsay.

{¶ 30} The trial court admitted Dr. Chohan's pursuant to Evid.R. 803(6) and 902(10). Evid.R. 803(6) provides that business records are not subject to exclusion as hearsay if they are made in the course of a regularly conducted business activity "because the courts presume that such records are trustworthy given the self-

interest to be served by the accuracy of such entries." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 21, citing *Weis v. Weis*, 147 Ohio St. 416, 425-426, 72 N.E.2d 245 (1947).

{¶ 31} To qualify for the business records exception, a record must be authenticated by the record custodian or some other qualified witness. *See, e.g.*, *State v. Boiani*, 8th Dist. Cuyahoga No. 98314, 2013-Ohio-1342, ¶ 29, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171.

{¶ 32} Medical records, however, may be "self-authenticated" pursuant to Evid.R. 902(10). Evid.R. 902(10) provides for the self-authentication of "[a]ny signature, document, or other matter declared by any law of a jurisdiction, state or federal, to be presumptively or prima facie genuine or authentic." R.C. 2317.422 provides that medical records are self-authenticating if certain conditions are met. R.C. 2317.422 states, in relevant part:

> [T]he records, or copies or photographs of the records, of a hospital, * * * in lieu of the testimony in open court of their custodian, person who made them, or person under whose supervision they were made, may be qualified as authentic evidence if any such person endorses thereon the person's verified certification identifying such records, giving the mode and time of their preparation, and stating that they were prepared in the usual course of the business of the institution.

{¶ 33} During discovery, Arconic obtained authorizations signed by Bohl for the release of medical records. Arconic submitted a signed authorization with a request for the release of Bohl's medical records to Mercy Regional Medical Center ("Mercy"). Mercy released the medical records to Arconic's lawyers with a certification that the records "were recorded at or near the time of the act, condition,

or event described therein." Thus, the records were certified as authentic and maintained in the regular course of Mercy's business.

{¶ 34} Bohl nevertheless contends the records were not properly authenticated because they were not certified by Dr. Chohan, the doctor who made the records. She also argues the records do not qualify as business records because they contain the doctor's opinions and diagnoses. However, both Evid.R. 803(6) and R.C. 2317.422 provide that a custodian of the records may certify the records as authentic business records. Requiring a certification from the doctor who made the record is unnecessary and would defeat the purpose of R.C. 2317.422 and Evid.R. 803(6). Furthermore, it is well established that certified medical records from hospitals, including the opinions and diagnoses contained within those records, are admissible under the business records exception to the hearsay rule. *Ford v. Sunbridge Care Ents.*, 2016-Ohio-1122, 62 N.E.3d 609, ¶ 13 (8th Dist.); *Smith v. Dillard's Dept. Stores*, 8th Dist. Cuyahoga No. 75787, 2000 Ohio App. LEXIS 5820 (Dec. 14, 2000).

{¶ 35} Still, Bohl contends the records from Mercy are not authentic and should have been excluded because she never saw Dr. Chohan at the hospital. However, the records indicate that Dr. Chohan is associated with Mercy; he is a doctor within Mercy's health system. And Bohl testified that she was a patient of Dr. Chohan and treated with him "from the '90s and in the 2000s up until 2014." (Tr. 222.) It does not matter where Bohl saw Dr. Chohan. The records of Bohl's visits to Dr. Chohan were maintained in the ordinary course of business by Mercy, and Mercy

certified that the documents produced were true and accurate copies of records prepared by Dr. Chohan for Bohl's treatment.

{¶ 36} Finally, Bohl asserts the trial court should have excluded Dr. Chohan's records because Arconic failed to provide them to her in a timely manner. However, the record shows that Bohl concealed the fact that she treated with Dr. Chohan. Bohl represented in responses to written discovery that she did not treat with any doctors other than Dr. Stanfield and Dr. Marsh for problems with her left knee. Arconic's lawyers discovered that she had been treating with Dr. Chohan through its investigation into another one of Bohl's workers' compensation cases. Once Arconic discovered relevant medical records from Dr. Chohan, it forwarded them to Bohl's lawyers on February 20, 2019. Arconic did not receive certification of Dr. Chohan's medical records from Mercy, the custodian of Dr. Chohan's medical records, until April 9, 2019. Arconic served the certification on Bohl's counsel the same day. Although trial commenced on April 19, 2019, any delay in procuring Dr. Chohan's records was caused by Bohl's failure to disclose the fact that she had treated with him for almost 15 years in her responses to discovery. Moreover, it is not clear how Bohl can claim prejudice by defense counsel's failure to provide Bohl with copies of her own medical records.

{¶ 37} The second assignment of error is overruled.

## C. Dr. Glazer's Testimony

{¶ 38} In the third assignment of error, Bohl argues the trial court erred in overruling her objections to Dr. Glazer's trial testimony and in denying her motion

to exclude Dr. Glazer's testimony. She contends his testimony should have been excluded because Dr. Glazer failed to comply with a subpoena, and his testimony violated Loc.R. 21.1 and Civ.R. 26 because it was inconsistent with his report.

{¶ 39} However, Bohl forfeited her objections to Dr. Glazer's testimony by failing to object to it at trial. Although Bohl filed a motion in limine in advance of trial to exclude Dr. Glazer's testimony, motions in limine do not preserve issues for appeal because they are tentative, preliminary rulings about an anticipated evidentiary issue and are subject to change during trial when the issue is presented in its full context. *State v. Grubb*, 28 Ohio St.3d 199, 203, 503 N.E.2d 142 (1986); *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 59, quoting *State v. Hill*, 75 Ohio St.3d 195, 203, 661 N.E.2d 1068 (1996) ("'[T]he denial of a motion in limine does not preserve a claimed error for review in the absence of a contemporaneous objection at trial.'") Therefore, Bohl forfeited her objections to Dr. Glazer's trial testimony.

{¶ 40} We nevertheless find no merit to Bohl's objections even if Bohl's objections to Dr. Glazer's testimony were not waived. Bohl first contends that Dr. Glazer's trial testimony exceeded the scope of his expert report and therefore violated Loc.R. 21.1 and Civ.R. 26. As previously stated, Loc.R. 21.1(B) prohibits a nonparty expert from testifying or providing opinions "on issues not raised in his report." Civ.R. 26(B)(5)(b) similarly requires disclosure of expert witnesses and "the subject matter on which the expert is expected to testify." The purpose of Civ.R. 26 and Loc.R. 21.1 is to prevent trial by ambush.

{¶ 41} Bohl claims she was "ambushed" when Dr. Glazer testified at trial about X-rays that were not discussed in his expert report. Dr. Glazer's expert report is not part of the record. However, Dr. Glazer testified that he discussed the X-rays in his addendum report, which was provided to Bohl's lawyers one month before trial. He testified:

Q: "[Y]ou testified here today that you actually reviewed the images, right?

A: Oh, I did review the images later.

Q: But those are outside your report * * * correct?

A: Not — not the 2019 report.

Q: Your 2019 report doesn't say that you reviewed images.

A: Oh, yes, it does.

(Glazer trial depo. at 103.)

{¶ 42} Dr. Glazer produced his original report on May 24, 2016. After additional discovery was completed, Dr. Glazer produced an addendum report more than 30 days before trial. Although the seven-page addendum is not in the record, Arconic quoted paragraphs from the report in its brief in opposition to Bohl's motion in limine to exclude Dr. Glazer's testimony. The relevant paragraphs indicate that Dr. Glazer disclosed that he reviewed the specific X-ray images at issue. The quoted paragraphs from Dr. Glazer's addendum state:

24. CD Cleveland Clinic, Lorain dated June 24, 2013, plain standing AP x-rays of both knees demonstrated bone on bone contact. On AP view, the right knee at this point has a medical unicompartmental spacer. On the left side, there are significant osteophytes seen involving mainly the medial parapatellar junction * * * The tunnel view confirms

the complete lack of cartilage and dishing out of the medial tibial plateau on the weightbearing tunnel.

25. X-rays performed on August 25, 2014, 2 days after the work injury. Standing AP shows bone-on-bone contact with osteophyte formation noted in the medial compartment. * * * In summary, the X-rays of August 25, 2014, are identical to the X-rays of June 24, 2014. Both are weightbearing bilateral knee x-rays as well as lateral patella and patellar views. There was no tunnel view taken on August 25, 2014.

Therefore, Bohl's claim that Dr. Glazer's trial testimony violated Loc.R. 21.1(B) and Civ.R. 26 by testifying outside the scope of his expert report is not supported by the record.

{¶ 43} Bohl next asserts that Dr. Glazer's testimony should have been excluded because he failed to comply with a subpoena duces tecum. She contends that Dr. Glazer failed to bring subpoenaed records to his trial deposition.

{¶ 44} However, the record shows that Arconic, not Bohl, noticed the deposition. Although Bohl served a subpoena duces tecum on Dr. Glazer, the subpoena commanded that Dr. Glazer and his employer to produce a list of documents, mostly related to Dr. Glazer's compensation for performing independent medical examinations, by *mailing* the document to plaintiff's counsel. The subpoena, which is in the records, does not require the production of documents at the trial deposition.

{¶ 45} Further, Dr. Glazer's lawyers challenged the scope of the subpoena, the disagreement was resolved, and the documents were produced the day before Dr. Glazer's trial deposition. There is nothing in the docket to indicate that Bohl filed a motion to compel responses to the subpoena. And since the subpoena never

required Dr. Glazer bring the documents to his deposition, his decision not to bring the documents to the deposition was not a valid basis for excluding his testimony.

{¶ 46} Bohl nevertheless argues the trial court should have excluded Dr. Glazer's testimony because Arconic's lawyers asked inappropriate leading questions during direct examination. Although leading questions should generally not be used during direct examination, there is no absolute prohibition against them. In fact, leading questions are permitted during direct examination "as may be necessary to develop the witness' testimony." Evid.R. 611(C). Therefore, the trial court has discretion to allow leading questions where appropriate. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 166.

{¶ 47} Bohl fails to explain how counsel's use of leading questions caused any unfair prejudice. Some of counsel's leading questions expedited the proceedings while others may have been unnecessary. Nevertheless, there is no evidence that any leading questions caused Dr. Glazer to change his testimony or opinions. In the absence of prejudice, we find no abuse of discretion as a result of the leading questions.

{¶ 48} Finally, Bohl argues Dr. Glazer's testimony should have been excluded due to inappropriate communications between Dr. Glazer and defense counsel. She contends defense counsel spoke with Dr. Glazer during a break in his recorded trial testimony. However, there is no rule prohibiting a lawyer from talking to a witness during a break unless the court issues an order precluding such communication. *See, e.g.*, *State v. Parker*, 1st Dist. Hamilton No. C-930892, 1994

Ohio App. LEXIS 5043 (Nov. 9, 1994) ("[T]he trial court did not abuse its discretion because it did not exhibit an unreasonable, arbitrary or unconscionable attitude in refusing to order no communications between the prosecutors and [a witness] during a break in her direct testimony.").  Bohl never requested an order that the trial court issue an order precluding witnesses from communicating with counsel until the conclusion of their testimony.  Moreover, Bohl fails to demonstrate how she was prejudiced by defense counsel's conversation with Dr. Glazer.

{¶ 49} The third assignment of error is overruled.

{¶ 50} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
MARY EILEEN KILBANE, J., CONCUR