[Cite as *State v. Mitchell*, 2025-Ohio-2772.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                           :

    Plaintiff-Appellee,           :

                                         No.  114545

    v.                                    :

JAYSON MITCHELL,                     :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART,
                       AND REMANDED
**RELEASED AND JOURNALIZED:**  August 7, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-22-674402-A and CR-22-676740-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Tyler W. Blair, Assistant Prosecuting
Attorney, *for appellee*.

Susan J. Moran, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1}  Defendant-appellant Jayson Mitchell ("Mitchell") appeals his convictions for felonious assault and multiple other offenses.  For the reasons that follow, we affirm in part, reverse in part, and remand for resentencing.

## Factual and Procedural History

{¶ 2} On September 20, 2022, a grand jury was convened, and Mitchell was indicted in an 11-count indictment for an incident alleged to have occurred in Cleveland Heights on July 26, 2022 (the "Cleveland Heights Case"). The charges included two counts of failure to comply, felonies of the third degree (Counts 1 and 2). Count 1 contained a furthermore clause that Mitchell's conduct was the proximate cause of serious physical harm to persons or property. Count 2 contained a furthermore clause that Mitchell's conduct caused a substantial risk of serious physical harm to persons or property. A third count of failure to comply alleged that Mitchell was fleeing immediately after the commission of a felony, a felony of the fourth degree (Count 3). Counts 1 through 3 also included 1-year firearm specifications and forfeiture specifications.

{¶ 3} The remaining charges were two counts of having weapons while under disability, felonies of the third degree, each with an 18-month firearm specification, a one-year firearm specification, and a forfeiture specification (Counts 4 and 5); improperly handling a firearm in a motor vehicle, a felony of the fourth degree, including a forfeiture specification (Count 6); trafficking methamphetamine, a felony of the third degree, which included a one-year firearm specification and three forfeiture specifications (Count 7); drug possession, methamphetamines, a felony of the third degree, which included a one-year firearm specification and three forfeiture specifications (Count 8); possession of criminal tools, a felony of the fifth degree, including three forfeiture specifications (Count 9);

vandalism, with a furthermore clause that the property value or physical harm was in the amount of $7,500 or more but less than $150,000 (Count 10); and criminal damaging, with a furthermore clause that the violation created a risk of physical harm to any person, a misdemeanor of the first degree (Count 11).

{¶ 4} On December 16, 2022, a grand jury was convened and Mitchell was indicted in a 13-count indictment for an incident alleged to have occurred in East Cleveland on October 7, 2022 (the "East Cleveland Case"). The charges included two counts of felonious assault against a peace officer, felonies of the first degree, each with 18-month firearm specifications, one-year firearm specifications, and forfeiture specifications (Counts 1 and 2); two counts of having weapons while under disability, felonies of the third degree, each with 18-month firearm specifications, one-year firearm specifications, and forfeiture specifications (Counts 3 and 4); one count of failure to comply, with a furthermore clause alleging Mitchell's conduct was the proximate cause of serious physical harm to persons or property, a felony of the third degree, including an 18-month firearm specification, one-year firearm specification, and forfeiture specification (Count 5); two counts of aggravated vehicular assault, with a furthermore clause that Mitchell committed the offense while driving under suspension, felonies of the third degree, each with one-year firearm specifications and forfeiture specifications (Counts 6 and 7); two counts of aggravated vehicular assault, felonies of the fourth degree, each with one-year firearm specifications, and forfeiture specifications(Counts 8 and 9); one count of receiving stolen property, a felony of the fourth degree, including a one-year firearm

specification and forfeiture specification (Count 10); one count of improperly handling firearms in a motor vehicle, a felony of the fourth degree (Count 11); one count of drug possession, cocaine, a felony of the fifth degree (Count 12); and one count of criminal damaging, a misdemeanor of the first degree (Count 13).

{¶ 5} The State moved to join the two cases for trial. The defense filed an objection. After considering arguments of counsel, the trial court granted the motion. Mitchell waived his right to a jury trial on the having-weapons-while-under-disability charges and the 18-month firearm specifications, all of which required proof of prior convictions. Trial commenced on September 30, 2024, at which time the following evidence was presented.

**The Cleveland Heights Case**

{¶ 6} Cleveland Heights Patrolman Michael Hill ("Ptl. Hill") testified that on July 26, 2022, he was driving northbound on South Taylor Road near Antisdale Avenue when he witnessed a tan GMC Acadia (the "SUV"), traveling southbound on South Taylor Road at a high rate of speed. Ptl. Hill maneuvered his cruiser behind the SUV and initiated a traffic stop, utilizing his overhead lights and sirens. The SUV stopped right before Cedar Road.

{¶ 7} As he approached the driver's side window, Ptl. Hill observed that the driver was a black male between the age of 30 and 35 and that there was no one else in the vehicle. Just as Ptl. Hill reached the window, the driver sped off. Ptl. Hill returned to his cruiser and attempted to follow the vehicle. However, he stopped after 30 seconds when he realized that the SUV was accelerating, determining that

it was unsafe to continue chasing the vehicle. Ptl. Hill turned off his lights and sirens and reported the situation over the radio to his colleagues and to the next city in the suspect vehicle's trajectory, Shaker Heights. Ptl. Hill continued to follow the SUV from a distance. He saw the SUV turn from South Taylor Road onto Fairmount Boulevard. When he was about six houses from the intersection of South Taylor Road and Fairmount Boulevard, a young woman ran into the street, flagged him down, and reported that a car hit a house.

{¶ 8} A doctor testified that she was driving home after visiting a friend around 11:00 p.m., on July 26, 2022. She was driving on South Taylor Road near Tullamore Road headed towards Fairmount Boulevard when she saw a vehicle coming up behind her traveling at a high rate of speed. The vehicle moved into the opposite lane of travel to pass her, then moved in front of her car. The doctor saw the vehicle run the red light at the Fairmount Boulevard intersection, narrowly missing two cars. She observed the driver losing control of the vehicle as he attempted to turn left. The vehicle then skidded, flipped over, and hit a house located at the Fairmount Boulevard and Taylor Road intersection. Other witnesses testified about the accident and described a vehicle traveling at a high rate of speed, running the red light, losing control, and hitting a nearby house.

{¶ 9} Ptl. Hill testified that he used his spotlight to scan the area and observed pieces of a car and a house, and the SUV completely on its side. He observed that the SUV had hit a house on Fairmount Boulevard. Testimony also established that Mitchell hit the garage, a car parked outside the garage, a fence, and

a motorcycle. When Ptl. Hill approached the SUV he determined there was one person in the SUV. The driver later identified himself to the paramedics as Mitchell and indicated that he was alone in the car and the accident occurred when he was fleeing from the police, missed a turn, and crashed into a house. The State introduced photographs of the damage taken by officers; however, the owner(s) of the damaged property did not testify, and the State did not introduce evidence regarding the value of the property or the cost of repair.

{¶ 10} During a search of the SUV, police discovered a firearm, a Glock 42, several methamphetamine pills, and a scale. The parties stipulated that the gun was test fired and operable. The registered owner of the SUV appeared at the scene to identify her vehicle. She also identified herself as Mitchell's significant other. The SUV's owner did not testify at trial.

**The East Cleveland Case**

{¶ 11} Maple Heights Police Officer Tyler Vasko ("Off. Vasko") testified that in the early morning hours of October 4, 2022, he took a stolen vehicle report that a black Hyundai Sonata was stolen. The owner of the Hyundai was also the owner of the SUV from the Cleveland Heights Case. She informed Off. Vasko that she knew the identity of the person who had her vehicle. Off. Vasko subsequently entered the car as stolen in the Law Enforcement Access Data System ("LEADS").

{¶ 12} On October 7, 2022, East Cleveland Patrolman Yadiel Roman ("Ptl. Roman") and his partner were stationed near Shaw High School when they were alerted that a nearby vehicle, a black Hyundai Sonata, had previously been reported

stolen. After receiving the notice, Ptl. Roman testified that they checked the vehicle on LEADS, which confirmed the vehicle was reported stolen. They decided to conduct a "high risk stop" because, in addition to the stolen vehicle report, the car had heavily tinted windows such that they were unable to see inside.

{¶ 13} At the time of the stop, the car was parked at a pump at the Sunoco gas station near Euclid Avenue and Shaw Avenue. Ptl. Roman called for backup, and Patrolmen Jason Anderson ("Ptl. Anderson") and Kevin Frye ("Ptl. Frye") came to assist. When they arrived, Ptl. Anderson and Ptl. Frye positioned their cruiser in front of the suspect's vehicle, while Ptl. Roman positioned theirs behind it. Ptl. Anderson and Ptl. Frye stepped out of their cruiser and approached the suspect's vehicle with guns drawn. The driver of the suspect's vehicle almost immediately reversed, ramming into the cruiser parked behind his car. The driver then drove forward towards Ptl. Anderson, almost hitting him and Ptl. Frye. Ptl. Anderson fired one shot at the car, and Ptl. Frye fired two shots. The driver then fled westbound on Euclid Avenue. The officers radioed to dispatch regarding the fleeing car and shots fired. After checking to ensure Ptl. Anderson and Ptl. Frye were all right, Ptl. Roman and his partner attempted to follow the vehicle; however, it managed to get away. Ultimately, Patrolmen Roman found the car near Euclid and Superior, where it crashed after hitting another vehicle.

{¶ 14} A construction worker ("victim-son") testified that he had taken his mother ("victim-mother") out that night to a casino for a belated birthday celebration. They were on their way home, his mother was driving, and they were

stopped for quite some time at the light on Superior approaching Euclid Avenue. When the light finally turned green, they entered the intersection and were immediately hit by another car.

{¶ 15} The victim-son did not remember much about the accident other than seeing headlights before they were "T-boned." At some point, he blacked out and woke up in the hospital. He and his mother were in the hospital for approximately three months. He suffered a broken hip, pelvis, and femur. As a result, doctors placed a rod in his leg and several screws in his spine. The victim-son was diagnosed with post-traumatic stress disorder (PTSD) because he could not sleep, had night terrors, and struggled with loud noises. As a construction worker prior to the accident, his injuries severely impacted his ability to work. He testified that now he struggles with walking, going up and down stairs, sitting or standing for long periods of time, and lifting more than 30 pounds.

{¶ 16} The victim-mother did not testify. Prior to trial, her medical records were accompanied by a notarized statement that they were created in the ordinary course of business. The parties stipulated to the authenticity of both the victim-son's and his mother's medical records. When the State notified the court that the victim-mother would not be testifying, the defense objected to the introduction of her medical records without her testimony. The court overruled the objection.

{¶ 17} In the absence of his mother's testimony, the victim-son identified his mother's name and date of birth on the medical records and indicated the medical records were hers. Her medical records established she fractured her pelvis, left

lumbar vertebrae, and multiple ribs during the accident. She also suffered from anoxic brain damage. The victim-son testified that he sees his mother every day and he observed that she is not the same since the accident. She is overly anxious and her anxiety levels are always "through the roof." She does not like to get in cars and it is hard to get her to go places. He testified that since the accident, his mother bends over when she walks.

{¶ 18} Cleveland Heights Police Lieutenant David Spence ("Lt. Spence") testified he worked with a special task force that responds to fatal or major crashes within the county and assists with investigations in East Cleveland. On October 7, 2022, the East Cleveland Police Department asked him to conduct an accident investigation into this case. After explaining his process, the measurements he took, and the basis for his analysis, Lt. Spence testified that the suspect's vehicle was traveling approximately 80 ½ m.p.h., and the victim-mother's car was traveling approximately 9 m.p.h., at the time of impact. Video from a nearby Shell station corroborated Lt. Spence's testimony. The video also showed that the victim-mother's car rolled multiple times before hitting a pole.

{¶ 19} When Ptl. Roman approached the scene, he initially detained a man who was walking near the Hyundai Sonata. However, he later determined the man was not involved in the incident. Ptl. Roman located Mitchell outside of the Hyundai Sonata on the passenger side. He was arrested, and during a search of the car, officers found a .22-caliber Ruger LCP pistol and suspected drugs, later identified as cocaine. Video from the Sunoco station, where police initially stopped the Hyundai

Sonata, showed someone wearing dark pants and a black and white patterned pullover walking from the station to the driver's side of the car. The person can be seen opening the driver's side door and entering the car. East Cleveland Police Commander Joseph Marche ("Cmdr. Marche") testified that the video depicted Mitchell entering the driver's side of the Hyundai Sonata right before the vehicle fled from police. Video from Ptl. Roman's body-camera captured Mitchell's arrest. The video depicted Mitchell wearing dark pants and a patterned black and white pullover. Pictures of the driver's side of the car also showed significant damage to the driver's side door.

{¶ 20} In addition, Cmdr. Marche identified several recorded calls from the Cuyahoga County Jail by the jail call logs as calls made by Mitchell after his arrest. The trial court admitted the evidence over the defense's objection. In the recordings, the collect call prompt identifies the caller as "Jason," and the caller made statements in one call about fleeing from East Cleveland and in another that he had the black Hyundai Sonata. The State did not present a witness to identify the voice as belonging to Mitchell.

**Conclusion of the Trial**

{¶ 21} After the submission of evidence, the defense moved for acquittal under Crim.R. 29. The State objected but conceded that there was no evidence to support the criminal-damaging charge, Count 11 in the Cleveland Heights Case. The trial court granted the motion for Count 11 but denied it for the remaining charges.

The defense did not renew its motion to sever the indictments at the conclusion of the State's case or at the conclusion of trial.

{¶ 22} The jury and the trial court found Mitchell guilty on all charges. In both cases, the State elected to merge all the one-year firearm specifications with the 18-month specifications. In the East Cleveland Case, the trial court sentenced Mitchell to an aggregate term of 11 years to 13 ½ years. The trial court did not merge any of the counts. In the Cleveland Heights Case, the trial court sentenced Mitchell to an aggregate sentence of four years to run consecutively to the sentence in the East Cleveland Case, for a total aggregate sentence of 15 years to 17 ½ years. The trial court did not merge any of the counts in this case either.

{¶ 23} Mitchell appeals and assigns the following errors for our review:

### Assignment of Error No. 1

[Mitchell's] Double Jeopardy Rights under the U.S. Constitutional Amendment V and Ohio Const. Art. 1 Section 10 were violated by the trial court's imposition of separate sentences for allied offenses of similar import under R.C. 2941.25.

### Assignment of Error No. 2

Trial court erred when it denied [Mitchell's] motion for relief from prejudicial joinder, which allowed the State to introduce improper character evidence of [Mitchell] in violation of Evid.R. 401-404, thereby denying him Due Process and a right to a fair trial under both the United States and Ohio Constitutions.

### Assignment of Error No. 3

[Mitchell] was denied his right to confrontation under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when sustaining his conviction of aggravated vehicular assault without the testimony of the alleged victim.

## Assignment of Error No. 4

The verdicts in this case are against the sufficiency of the evidence and should be reversed because the convictions violate the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article 1, Section 10 of the Constitution of the State of Ohio.

## Assignment of Error No. 5

[Mitchell's] convictions are against the manifest weight of the evidence in violation of the Due Process Clause of the 14th Amendment to the U.S. and of the Ohio Constitution.

## Law and Analysis

{¶ 24} For ease of analysis, we will address the assignments of error out of order, beginning with the second assignment of error.

## Relief from Prejudicial Joinder

{¶ 25} In his second assignment of error, Mitchell argues that the trial court erred when it joined his two cases for trial because it allowed the State to introduce improper other acts evidence that otherwise would not have been admissible if the cases had been tried separately. Specifically, Mitchell argues that while the evidence in each case was simple and direct, the State was also required to establish that the evidence would not have been excluded under Evid.R. 404(A) and 404(B)(1). Mitchell stresses that this was particularly prejudicial with respect to the East Cleveland Case, because Mitchell's identity was in question and the joinder allowed the jury to improperly infer that he acted in conformity with his actions in the Cleveland Heights Case. Mitchell's argument is not well-taken.

{¶ 26} Crim.R. 13 governs joint trials for multiple indictments, noting that joinder is proper "if the offenses or the defendants could have been joined in a single indictment or information." Crim.R. 8(A), which governs joinder of offenses in the same charging document, holds that

> two or more offense may be charged together if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan or are part of a course of criminal conduct."

*State v. Belle*, 2019-Ohio-787, ¶ 17 (8th Dist.), quoting Crim.R. 8(A).

{¶ 27} Joining multiple offenses in a single trial is favored if the requirements of Crim.R. 8(A) are satisfied "because it conserves judicial resources, lessens the inconvenience to witnesses, and minimizes the possibility of inconsistent results before different juries." *Id.* at ¶ 18 citing *State v. Anderson*, 2017-Ohio-931, ¶ 23 (8th Dist.), citing *State v. Torres*, 66 Ohio St.2d 340 (1981), *State v. Schiebel*, 55 Ohio St.3d 71, 86-87 (1990), and *State v. Schaim*, 65 Ohio St.3d 51, 58 (1992).

{¶ 28} However, a trial court should not join cases where it appears the defendant would be prejudiced, even if joinder would be permissible under Crim.R. 13 and 8(A). *State v. Lucas*, 2022-Ohio-3278, ¶ 47 (3d Dist.), citing *State v. Gordon*, 2018-Ohio-259, ¶ 20. Crim.R. 14 provides:

> If it appears that a defendant . . . is prejudiced by a . . . joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, . . . or provide such other relief as justice requires.

{¶ 29} The defendant "'has the burden of furnishing the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial.'" *State v. Spaulding*, 2016-Ohio-8126, ¶ 62, quoting *Torres* at 343. The State can challenge the claim of prejudice "by showing either that (1) it could have introduced evidence of the joined offenses as 'other acts' under Evid.R. 404(B) or (2) the 'evidence of each crime joined at trial is simple and direct.'" *Id.*, quoting *State v. Lott*, 51 Ohio St.3d 160, 163 (1990).

{¶ 30} An appellate court ordinarily reviews a trial court's ruling on joinder for an abuse of discretion. *State v. Lee*, 2017-Ohio-1449, ¶ 15 (8th Dist.), citing *State v. Dean*, 2015-Ohio-4347, ¶ 60; *State v. Webster*, 2016-Ohio-2624, ¶ 42 (8th Dist.). However, a "'motion for severance due to prejudicial misjoinder . . . must be renewed at the close of the State's case or at the conclusion of all the evidence and unless made at that time, it is waived.'" *State v. Quinn*, 2022-Ohio-2038, ¶ 12 (8th Dist.), quoting *State v. Owens*, 51 Ohio App.2d 132 (9th Dist. 1975). This rule also applies to the joinder of two indictments. *Id.* at ¶ 13, citing *State v. Frazier*, 2019-Ohio-1433, ¶ 11 (8th Dist.) ("[T]o properly preserve the issue of a trial court's joinder of indictments for appeal, the defendant must object to the joinder of indictments at the time of trial, and at the close of the State's case or at the close of evidence."). Failure to renew the objection at the close of the State's case or the close of evidence waives all but plain error. *Id.*

{¶ 31} To establish plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate that the error

affected the outcome of the trial. *State v. Gordon*, 2018-Ohio-259, ¶ 23, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 22. However, we do not need to consider whether the trial court plainly erred, because, as Mitchell admits in his brief, the evidence presented was simple and direct. "'[W]hen simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as "other acts" under Evid.R. 404(B).'" *Belle*, 2019-Ohio-787, at ¶ 24 quoting *Lott*, 51 Ohio St.3d at 163; *see also State v. Franklin*, 62 Ohio St.3d 118, 122, (1991) ("[I]f the State can meet the joinder test [i.e., the simple and direct test], it need not meet the stricter other-acts test.").

{¶ 32} Evidence of each crime is simple and direct when it is "so clearly separate and distinct as to prevent the jury from considering evidence of [one crime] as corroborative of the other." *State v. Quinones*, 2005-Ohio-6576, ¶ 48 (11th Dist.). "The purpose of the 'joinder test' is to prevent the finder of fact from confusing the offenses." *State v. Varney*, 2008-Ohio-5283 ¶ 19 (4th Dist.).

{¶ 33} Here, although the cases were joined for trial, the State presented all of the evidence in the Cleveland Heights Case first and then presented all of the East Cleveland Case's evidence. In the Cleveland Heights Case, there was simple and direct evidence that Mitchell was stopped by Ptl. Hill, fled from the stop, and drove recklessly at a high rate of speed, culminating in an accident that damaged the property of others. He also admitted to paramedics that he fled from police and was involved in the accident.

{¶ 34} In the East Cleveland Case, the evidence was likewise simple and direct. Officers approached a car that was reported stolen. Video evidence showed Mitchell enter the driver's side of the car, wearing the clothes that he was later wearing after he hit the victim-mother's car. Despite being blocked by police, Mitchell reversed, hitting Ptl. Roman's cruiser, then maneuvered around the police car, almost hitting Ptl. Anderson and Ptl. Frye, and then fled culminating in his vehicle hitting the victim-mother's car at Euclid and Superior. While Mitchell was found on the passenger's side of the car, he was seen entering the driver's side of the vehicle, and the evidence established that the airbag deployed on the driver's side only. Additionally, pictures of the black Hyundai Sonata establish that the driver's side door was crumpled as a result of the accident, leaving the passenger side door the only means of egress.

{¶ 35} Based on the foregoing, we find that the evidence presented was simple and direct, and, therefore, the trial court did not commit plain error when it joined the cases. Accordingly, the second assignment of error is overruled.

**Admissibility of the Medical Records**

{¶ 36} In the third assignment of error, Mitchell argues the trial court erred in admitting the victim-mother's medical records after the State informed the court that she would not be testifying. Mitchell argues that the trial court's decision affected a substantial right because there was insufficient evidence to establish serious physical harm to the victim-mother without the admitted medical records. Additionally, Mitchell argues that the inability to cross-examine her violated

Mitchell's right to confrontation under the Sixth Amendment of the U.S. Constitution. After a review of the evidence, we find that the trial court did not err when it admitted the medical records and Mitchell's right to confrontation under both the United States and Ohio Constitutions was not violated.

{¶ 37} Preliminarily, we address the admissibility of the medical records. An appellate court will not disturb the trial court's broad discretion in deciding the admission and or exclusion of evidence unless the trial court ""clearly abused its discretion and appellant is materially prejudiced"" by the decision. *State v. Worship*, 2022-Ohio-52, ¶ 12 (12th Dist.), quoting *State v. Sizemore*, 2019-Ohio-4400, ¶ 35 (12th Dist.), quoting *State v. Martin*, 2007-Ohio-7073, ¶ 9 (12th Dist.).

{¶ 38} Here, the parties stipulated to the authenticity of the medical records prior to trial. The defense only interposed an objection to admissibility when it learned that the State was not calling victim-mother to testify. However, even without the stipulation, R.C. 2317.422 provides that medical records are self-authenticating under Evid.R. 902(10) as long as certain conditions are met. *Id.* at ¶ 13. R.C. 2317.422 provides, in pertinent part:

> [T]he records, or copies or photographs of the records, of a hospital . . . in lieu of the testimony in open court of their custodian, person who made them, or person under whose supervision they were made, may be qualified as authentic evidence if any such person endorses thereon the person's verified certification identifying such records, giving the mode and time of their preparation, and stating that they were prepared in the usual course of the business of the institution.

{¶ 39} Evid.R. 902(10) provides

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

. . .

**Presumptions created by law.** Any signature, document, or other matter declared by any law of a jurisdiction, State or federal, to be presumptively or prima facie genuine or authentic.

{¶ 40} The victim-mother's medical records were accompanied by a notarized document by University Hospitals' manager of Health Information Services, i.e., the custodian of records, certifying that the records provided for her were

> true and authentic copies of the medical records for the above named patient from 10/7/22 to 11/7/22 and were prepared in the usual course of business of University Hospital Cleveland Medical Center, and that they were prepared by the employees of the institution on the dates endorsed herein.

{¶ 41} Evid.R. 803(6) provides that business records are not excluded under the hearsay rule if they are made in the ordinary course of business. This is "'because the courts presume that such records are trustworthy given the self-interest to be served by the accuracy of such entries.'" *Bohl v. ALCOA, Inc.*, 2020-Ohio-2824, ¶ 30 (8th Dist.) quoting *State v. Cassano,* 2012-Ohio-4047, ¶ 21 (8th Dist.), citing *Weis v. Weis,* 147 Ohio St. 416, 425-426 (1947). The contents of the victim-mother's medical records were admissible under the rule. "[I]t is well established that certified medical records from hospitals, including the opinions and diagnoses contained within those records, are admissible under the business records exception to the hearsay rule." *Bohl* at ¶ 34 citing *Ford v. Sunbridge Care Ents.*, 2016-Ohio-1122, ¶ 13 (8th Dist.); *Smith v. Dillard's Dept. Stores*, 2000-Ohio-2689 (8th Dist.).

Accordingly, the trial court did not abuse its discretion when it admitted the medical records.

{¶ 42} Next, we examine Mitchell's Confrontation Clause challenge. Both the United States and Ohio Constitution guarantee a criminal defendant the right to confront witnesses. *In re H.P.P.*, 2020-Ohio-3974, ¶ 20 (8th Dist.). The Ohio Constitution provides no greater right to confrontation than the Sixth Amendment to the United States Constitution. *State v. Self*, 56 Ohio St.3d 73, 79 (1990). However, that right is only implicated when a party seeks to admit "out-of-court statements that are testimonial in nature when the declarant does not testify in the proceeding." *Lorain v. Brown*, 2021-Ohio-2161, ¶ 10 (9th Dist.). A person is a "witness" for the purposes of the Confrontation Clause if their statements are testimonial in nature. *Id.* "'It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.'" *Id.*, quoting *Davis v. Washington*, 547 U.S. 813, 821 (2006).

{¶ 43} Mitchell does not argue that the medical records contained testimonial statements from the victim-mother that required cross-examination. Rather, Mitchell argues that the admission of her medical records without her testimony was an error that substantially prejudiced him because "the inability to cross-examine the witness who could provide context to establish the essential elements of serious physical harm and verify the records' accuracy undermines the reliability of the evidence and violates the defendants' rights under the confrontation

clause." However, as already established, the records were certified and self-authenticating and did not require the victim-mother's testimony for verification. Additionally, the doctors' diagnoses were admissible as part of a business record under Evid.R. 803(6) and did not require extrinsic testimony from the doctors or the victim-mother as a prerequisite for admissibility.

{¶ 44} Accordingly, the third assignment of error is overruled.

**Sufficiency of the Evidence**

{¶ 45} In the fourth assignment of error, Mitchell challenges his convictions based on the sufficiency of the evidence. Mitchell argues that his convictions for failure to comply, trafficking, and vandalism in the Cleveland Heights Case were not supported by sufficient evidence. He further argues that his convictions for receiving stolen property and possession of criminal tools in the East Cleveland Case were not supported by sufficient evidence. After an extensive review of the record and the law, we find that Mitchell's argument with respect to the vandalism charge is well taken; however, the State presented sufficient evidence on the remaining charges to sustain the convictions.

{¶ 46} A challenge to the sufficiency of the evidence supporting a conviction examines whether the State met its burden of production. *State v. Hunter*, 2006-Ohio-20, ¶ 41 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). It involves a review of the evidence admitted at trial and a determination of "'whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Goins*, 2021-Ohio-1299, ¶ 13

(8th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The question is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.* quoting *Jenks* at *id*. The question is not "'whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *Id*., quoting *Thompkins* at 390.

{¶ 47} With respect to the failure-to-comply charge in the Cleveland Heights Case, Mitchell challenges the furthermore clause, arguing the State failed to present sufficient evidence to establish that Mitchell caused serious physical harm to the property on Fairmount Boulevard. Specifically, Mitchell claims that the State only introduced photographs of the damage sustained to the property and that the photographs alone were insufficient to establish serious physical harm.

{¶ 48} "Serious physical harm to property" is defined as "any physical harm to property that does either of the following":

    (a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;

    (b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.

R.C. 2901.01(A)(6).

{¶ 49} Mitchell argues that the State failed to present evidence that there was a substantial loss of value to the property or that the repair required a substantial

amount of time, effort, or money to repair or replace the damaged property. However, R.C. 2901.01(A)(6)(b) provides that the State could also meet its burden by establishing that the incident temporarily prevented the use or the enjoyment of the property. The property owner's car was practically crushed as a result of the accident. Moreover, the photographs depicted significant damage to the attached brick garage; the outside wall was demolished and the only thing remaining was the roof, which was hanging precariously from the house. The jury could find serious physical harm to property because the damage, supported by the photographic evidence, would temporarily prevent the use or enjoyment of the car and garage. Additionally, the jury could infer that, given the extent of the damage, the damage would interfere with the use and enjoyment of the property for a substantial period of time. *See State v. Rembert,* 2017-Ohio-7922, ¶ 11 (9th Dist.) (finding that evidence of how much time, effort, or money was spent to repair the property was unnecessary to establish that the harm temporarily prevents or interferes with the use or enjoyment of the property). Accordingly, there was sufficient evidence presented to support the conviction for failure to comply as charged in the indictment.

{¶ 50} Mitchell also challenges his conviction for trafficking in the Cleveland Heights Case. Without citation to authority, Mitchell alleges that there was no evidence of trafficking since the only testimony offered was that the drugs were found in the car. Further, Mitchell argues that there was no testimony to support a finding that the weight of the drugs alone was sufficient to prove trafficking.

{¶ 51} Mitchell was convicted of one count of drug trafficking in violation of R.C. 2925.03(A)(2), which provides:

> No person shall knowingly do any of the following: Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶ 52} The testimony at trial established that officers found methamphetamine greater than the bulk amount of in a baggy, a digital scale, a razor blade, and a firearm inside the vehicle Mitchell was driving. This court and others have noted that "items such as plastic baggies, wrapping devices, digital scales, and large sums of money are often used in drug trafficking and may constitute circumstantial evidence of the conduct proscribed by R.C. 2925.03(A)(2)." *State v. Townsend*, 2019-Ohio-544, ¶ 16 (8th Dist.), citing *State v. Hawthorne*, 2016-Ohio-203, ¶ 23 (8th Dist.), citing *State v. Bowling*, 2010-Ohio-3595, ¶ 60 (8th Dist.); *State v. Forte*, 2013-Ohio-5126, ¶ 10 (8th Dist.), quoting *State v. Rutledge*, 2013-Ohio-1482, ¶ 15 (6th Dist.) (collecting cases). Thus, regardless of the weight of drugs, there was sufficient circumstantial evidence of trafficking found in the vehicle. Looking at the evidence in a light most favorable to the prosecution, we find there was sufficient evidence to establish the crime of trafficking.

{¶ 53} With respect to his conviction for vandalism in the Cleveland Heights Case, Mitchell argues that there was insufficient evidence that he acted knowingly

and that the value of the property or the amount of physical harm involved was $7,500 or more but less than $150,000.

{¶ 54} To establish vandalism, the State must prove that (1) Mitchell knowingly caused serious physical harm to an occupied structure or any contents owned by another, and (2) furthermore that the value of the property or the amount of physical harm involved is $7,500 or more but less than $150,000.

{¶ 55} "Knowingly" is statutorily defined, as follows:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist.

R.C. 2901.22(B).

{¶ 56} The commentary to the statute explains further that

"[k]nowledge" is cast in this section in terms of an awareness of the probability that one's conduct will cause a certain result or be of a certain nature, or that certain circumstances exist. . . . Basing the definition of knowledge on probability and the definition of recklessness on likelihood is intentional. Something is "probable" when there is more reason for expectation or belief than not, whereas something is "likely" when there is merely good reason for expectation or belief.

{¶ 57} In contrast, "[a] person is reckless with respect to circumstances when, with heedless indifference of the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 58} We are mindful that

[m]ens rea is a graduated assessment of culpability based upon an actor's subjective appreciation of risk. As the degree of risk resulting from an action increases, so does the degree of culpability. Hence, recklessness implies an element of chance — the actor proceeding despite knowing that the conduct contains a risk that a certain result is likely. Knowing conduct means that the actor acts with a degree of certainty in one's intention that a result will occur.

*State v. Robinson*, 2007-Ohio-3646, ¶ 10 (8th Dist.).

{¶ 59} The testimony established that Mitchell fled from police at a high rate of speed. His reckless driving in a residential neighborhood posed a substantial and unjustifiable risk of harm to other drivers and property owners. The doctor who was driving by testified that Mitchell ran a red light and nearly hit two cars that had the right of way. Notably, Mitchell's conduct was reckless since it posed a substantial and unjustifiable risk that he could fail to perceive other cars or lose control and cause an accident. Because we find Mitchell's conduct was reckless, but not knowing there was insufficient evidence to support the conviction for vandalism.

{¶ 60} Finally, in the East Cleveland Case, Mitchell challenges the sufficiency of the evidence for receiving stolen property and possession of criminal tools.

{¶ 61} With respect to receiving stolen property, the State needed to establish that Mitchell received, retained, or disposed of the property of another, knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense. R.C. 2913.51(A). Mitchell's main concern is whether there was sufficient evidence to establish that he knew or had reasonable cause to believe the car was stolen, where the only testimony established the owner reported the theft.

{¶ 62} Knowledge is relevant to this offense as well. With respect to circumstances, "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

> "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B). Absent an admission by a defendant, the question of whether the defendant had reasonable cause to believe an item was stolen can only be proved by circumstantial evidence." *State v. Rivera,* 2013-Ohio-3203, ¶ 9 (12th Dist.).

*In re M.P.A.S.*, 2025-Ohio-700, ¶ 12 (12th Dist.).

{¶ 63} It is not necessary for an owner to testify at trial to establish the vehicle was stolen. *State v. Perez*, 2008-Ohio-471, ¶ 11 (6th Dist.). The only evidence necessary is "evidence of a wrongful taking from the possession of another. . . ." *Id.*, quoting *State v. Emmons,* 57 Ohio App.2d 173, 177 (2d Dist. 1978). Accordingly, the police officer's testimony that the owner reported the car was stolen was sufficient to establish that there was a wrongful taking from the possession of another. With respect to a defendant's knowledge that the vehicle was stolen,

> a defendant's unexplained possession of stolen property may give rise to the permissive inference that the defendant is guilty of a theft offense. Likewise . . . the jury could properly infer that [the accused] had knowledge that the property was stolen.

*State v. Wilson*, 21 Ohio App.3d 171, 172 (9th Dist. 1985), *see also In re A.F.*, 2008-Ohio-5479, ¶ 11 (8th Dist.); *In re R.T.*, 2014-Ohio-5686, ¶ 14 (8th Dist.) (citations omitted)(also noting that the inference may be "particularly significant when . . . the defendant offers no explanation for his possession of the stolen goods").

{¶ 64} Furthermore, this court has found that "'erratic driving and flight from police officers is circumstantial evidence that the driver was aware that the vehicle he was in was stolen.'" *State v. James*, 2009-Ohio-3284, ¶ 22 (8th Dist.), quoting *State v. McNeir*, 2000 Ohio App. LEXIS 5562 *16, (Nov. 30, 2000, 6th Dist.). In the instant case, it does not appear that Mitchell was ever questioned about how the car came into his possession, so that factor is absent from this case. However, Mitchell fled from police, raising the inference that he knew the car was stolen. Based on the foregoing there was sufficient evidence presented regarding the elements of receiving stolen property.

{¶ 65} Turning to Mitchell's claim regarding his possession-of-criminal-tools conviction, Mitchell argues without citation to authority or the record, that there was no testimony that the items in question, the gun, cell phone, or scale, were criminal tools and thus he should not have been convicted. We decline to address this argument because Mitchell failed to comply with appellate rules. App.R. 16(A)(7); App.R. 12(A)(2).[1] An appellate court is not required to search the record for evidence in support of an appellant's argument nor is it required to search for supportive law. *Mayfair Village Condo. Owners Assn. v. Grynko*, 2013-Ohio-2100, ¶ 6 (8th Dist.), citing *Nob Hill E. Condo. Assn. v. Grundstein*, 2011-Ohio-2552, ¶ 11 (8th Dist.), and *Strauss v. Strauss*, 2011-Ohio-3831, ¶ 72 (8th Dist.).

---

[1] App.R. 12(A)(2) provides: The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).

**Weight of the Evidence**

{¶ 66} In the fifth assignment of error, Mitchell challenges the weight of the evidence for his convictions. Nevertheless, Mitchell only briefed two issues, and we will confine our review to those items. In the East Cleveland Case, Mitchell argues that the greater weight of the evidence failed to establish his identity as the perpetrator. Additionally, he argues that the greater weight of the evidence did not support a finding that he knowingly caused or attempted to cause physical harm to Ptl. Anderson and Ptl. Frye by means of an automobile. We find no merit in Mitchell's arguments.

{¶ 67} "'[W]eight of the evidence involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 2021-Ohio-856, ¶ 32, quoting *Thompkins*, 78 Ohio St.3d at 387. The examination of the weight of the evidence relates to "'the evidence's effect of inducing belief.'" *Id.*, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386-387. The appellate court must consider all of the evidence in the record, the reasonable inferences from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, citing *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983).

{¶ 68} With respect to his identity, Mitchell argues that no one saw him driving the black Hyundai Sonata because the windows were heavily tinted, DNA did not connect him to the driver's side of the car, and he was located outside of the

car on the passenger side of the vehicle. Further, Mitchell argues that when the police first arrived at the accident scene, they were focused on the victim-mother's car, which allowed time for the "real driver" to escape. Finally, he points out that the police initially detained another man, believing he was involved in the crime.

{¶ 69} The identity of the accused is an element of the crime and is part of the State's burden to prove the defendant is guilty beyond a reasonable doubt. *State v. Tate*, 2014-Ohio-3667, ¶ 15. The identity of the perpetrator, like any other element of a crime, may be proven by direct or circumstantial evidence. *State v. Fabal*, 2021-Ohio-1793, ¶ 26 (10th Dist.), citing *State v. Watkins*, 2016-Ohio-1029, ¶ 22 (10th Dist.), citing *State v. Mickens*, 2009-Ohio-1973, ¶ 18 (10th Dist.). The two types of evidence, direct and circumstantial, "are of equal evidentiary value." *Id.* at ¶ 27, citing *State v. Robinson*, 2018-Ohio-1809, ¶ 20 (10th Dist.), citing *Jenks*, 61 Ohio St.3d at 272.

{¶ 70} Direct evidence exists when a witness testifies about something within their personal knowledge, "such that a trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 2012-Ohio-4047, ¶ 13 (8th Dist.). Circumstantial evidence, in contrast, is "'proof of facts by direct evidence from, which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.'" *Fabal* at ¶ 26 quoting *State v. Wright*, 2019-Ohio-5201, ¶ 22 (10th Dist.), quoting *Robinson* at ¶ 20.

{¶ 71} In the instant case, there was direct evidence that someone wearing the same clothes as Mitchell at the time of his arrest left the Sunoco gas station, walked to the driver's side of the black Hyundai Sonata, opened the driver's side door, and entered the car. There was also direct evidence, in the form of photographs, that the driver's side of the car was severely damaged as a result of the accident and that the driver's side airbag deployed. The jury could infer from that evidence that Mitchell was the driver of the car. Ptl. Roman's dash came established there was less than a minute and a half between the time Mitchell fled the Sunoco station and the time Ptl. Roman arrived at the accident scene. Further, the jury could infer from the damage to the driver's door that Mitchell, as the driver of the vehicle, had to exit the car through the passenger side.

{¶ 72} Mitchell's argument that the officers missed the driver leaving the scene because they were focused on the victim-mother's car was merely speculation. Further, although the officers initially detained another individual, they testified that they cleared that person of involvement with the incident. Based on the foregoing, the State established Mitchell's identity by the greater weight of the evidence.

{¶ 73} In regard to his convictions for felonious assault, Mitchell argues that the evidence did not establish that he acted knowingly. Mitchell argues that he was trying to drive away from the area and that it was the officers who intentionally moved into his path. In his argument, Mitchell conflates purposeful and knowing

conduct, arguing that the officers were wrongly permitted to testify that Mitchell drove at Anderson in an attempt to strike him.

{¶ 74} To establish the crime of felonious assault under R.C. 2903.11(A)(2), the State needed to show that Mitchell knowingly caused or attempted to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance. As discussed above, knowing conduct, is established when "regardless of purpose, . . . the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). When combined with R.C. 2901.22(B), this court has found, in discussing felonious assault under R.C. 2903.11(A)(1), that felonious assault "'does not require that a defendant intend to cause "serious physical harm," but that the defendant acts with an awareness that [his] conduct probably will cause such harm.'" *State v. Reed*, 2008-Ohio-312, ¶ 7 (8th Dist.), quoting *State v. Lee,* 1998 Ohio App. LEXIS 4150 (10th Dist. Sept. 3, 1998). A similar argument can be made regarding R.C. 2903.11(A)(2), that the State does not have to prove that the defendant intended to attempt to cause or cause physical harm with an automobile, but he acts knowingly when there is an awareness that the conduct probably will cause such harm. "A defendant acts knowingly when, although not intending the result, he or she is nevertheless aware that the result will probably occur." *Reed* at *id.*

{¶ 75} Here, Mitchell was parked at a gas pump, with police cruisers blocking him in both the front and the rear. There was also a car parked at the gas

pump to the left of the driver's side of the vehicle. When he tried to flee, Mitchell turned the car to the left towards the gap between the parked car and the front police cruiser. Ptl. Anderson was standing between the parked car and his cruiser, and Ptl. Frye was standing behind him closer to their cruiser. A jury could infer that it was Mitchell's intention, i.e., to escape. However, he did so with knowledge that both Ptl. Anderson and Ptl. Frye were in close proximity to his vehicle and that he was further hemmed in by the car parked at the adjacent pump. The video established that Ptl. Anderson was so close to the Hyundai Sonata that he had to throw out his hand to push himself off the windshield to avoid being hit. Ptl. Frye dodged behind the cruiser to get out of the way. Given the foregoing, the evidence establishes that Mitchell knew that by trying to force his car through a narrow gap between two cruisers and a parked car, where two police officers were also standing, it was probable that he could hit one or both of the officers. Accordingly, we find that the felonious assault convictions were supported by the greater weight of the evidence.

{¶ 76} Based on the foregoing, the fifth assignment of error is overruled.

**Merger of Allied Offenses of Similar Import**

{¶ 77} Finally, in the first assignment of error, Mitchell argues that the trial court erred when it failed to merge charges at sentencing because they were allied offenses of similar import. In the Cleveland Heights Case, Mitchell alleges it was error for the trial court to fail to merge the three failure-to-comply charges, and that it was error for the trial court to fail to merge the two having-weapons-while-under-disability charges. In the East Cleveland Case, Mitchell argues that the trial court

erred when it failed to merge the two having-weapons-while-under-disability charges and the four aggravated-vehicular-assault charges. The State argues that the trial court did not err and the counts were not required to merge; however, if there was an error, the case should be remanded for resentencing. After reviewing the record and the applicable law, we find that the trial court did not err when it decided not to merge the failure-to-comply charges. However, Mitchell's argument is well taken with respect to merger of the having-weapons-while-under-disability and aggravated-vehicular-assault charges.

{¶ 78} We review the decision on whether offenses should be merged as allied offenses of similar import under a de novo standard of review. *State v. Bailey*, 2022-Ohio-4407, ¶ 6, citing R.C. 2941.25, *State v. Williams*, 2012-Ohio-5699, ¶ 1. However, although the parties discussed the merger of some of the offenses in an earlier hearing, Mitchell did not object to the trial court's decision regarding the merger of offenses at sentencing. Therefore, we must review the decision for plain error. *Id.* at ¶ 7 citing *State v. Rogers*, 2015-Ohio-2459, ¶ 28 ("[T]he failure to raise the allied offense issue at the time of sentencing forfeits all but plain error.").

{¶ 79} Reviewing courts are exhorted to notice plain error "only under exceptional circumstances to prevent injustice." *Id.* at ¶ 8, citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. Plain error is established when an accused demonstrates that there was an obvious error "and that there is a reasonable *probability* that the error results in prejudice." (Emphasis in original.) *Rogers*, at ¶ 22. Even if we find that there was an obvious error, "it must have

affected a substantial right" such that the error "'affected the outcome of the trial.'" *Id.*, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Therefore, Mitchell must demonstrate "a reasonable probability that the error resulted in prejudice." *Id.*, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83 (2004). He may do so by demonstrating "a reasonable probability that his convictions constituted allied offenses of similar import." *Id.* at ¶ 29.

{¶ 80} When a defendant's conduct "supports more than one offense . . . a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses." *State v. Ruff*, 2015-Ohio-995, ¶ 24, citing R.C. 2941.25(B). When offenses are found to be allied offenses of similar import, the defendant, though charged with two or more offenses, may only be convicted of a single offense. *Id.* at ¶ 13, citing R.C. 2941.25(A).

{¶ 81} To determine whether a defendant may be convicted of multiple sentences, we employ a three-part test. *State v. Earley*, 2015-Ohio-4615, ¶ 12. We must consider:

> (1) were the offenses dissimilar in import or significance – in other words, did each offense cause separate identifiable harm? (2) Were they committed separately? And (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Ruff* at ¶ 31.

{¶ 82} In the Cleveland Heights Case, Mitchell was indicted for failure to comply based on three acts: (1) that his conduct was the proximate cause of substantial harm to persons or property; (2) that his conduct posed a substantial risk of harm to persons or property; and (3) that he committed the act of fleeing immediately after committing a felony. At the outset it is clear that, under *Ruff,* the offenses caused separate identifiable harm and were committed separately from one another. When he fled from Ptl. Hill, Mitchell possessed a gun while under disability and methamphetamines. He was thus in violation of failure to comply in Count 3 when he fled from Ptl. Hill at the initial traffic stop. After that, Mitchell continued to drive at a high rate of speed, driving in the wrong lane of traffic to pass the doctor, and then nearly missing two cars when he entered the intersection of Fairmount and South Taylor. At that point, Mitchell was in violation of failure to comply by creating a substantial risk of harm to persons or property, as alleged in Count 2. Finally, Mitchell lost control of his vehicle and crashed into the property on Fairmont, in violation of Count 1. Based on the foregoing, the offenses were not allied offenses of similar import, the offenses were dissimilar in import, and the trial court was not required to merge the counts.

{¶ 83} Next, Mitchell was charged with two counts of having weapons under disability in both cases under R.C. 2923.13(A)(2) and (A)(3). In the East Cleveland Case, Mitchell was charged with having weapons while under disability due to a prior conviction in 2008 for robbery with a one-year firearm specification (Count 4) and for a 2013 conviction for drug trafficking (Count 5). In the Cleveland Heights

Case, the underlying offense for Count 3 was a different 2013 conviction for drug trafficking, and the underlying offense for Count 4 was the same 2008 robbery conviction used in the East Cleveland Case. For ease of analysis, and because the analysis for the two cases is the same, we will confine our discussion to the Cleveland Heights Case.

{¶ 84} R.C. 2923.13(A)(2) and (3) provides that "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply":

> (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

R.C. 2923.13(A)(2) and (3).

{¶ 85} R.C. 2923.13(A)(2) and (3) could be committed with the same conduct. The evidence established that Mitchell had a gun in his vehicle at the time of the offense. Mitchell's conduct did not cause separate identifiable harm. The violations of R.C. 2923.13(A)(2) and (3) were not committed separately, and Mitchell did not commit the crimes with separate motivations or animus. The conduct in this case was Mitchell's possession of one firearm, while his disability was

a status created by his prior convictions. *See State v. Creech,* 2016-Ohio-8440, ¶ 38 (while finding that it was reversible error for the trial court to refuse to allow the defense to stipulate to an existing disability in a having-weapons-while-under-disability case, the court noted that "'proof of the defendant's status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense. *Old Chief* [*v. United States*, 519 U.S. 172,] 191 (1997).'"). Nonetheless, the possession of a single gun cannot result in multiple convictions having of weapons under disability.[2]

{¶ 86} Accordingly, the having-weapons-while-under-disability charges were allied offenses of similar import and should have been merged at sentencing. Based on the foregoing, we find that the trial court erred when it failed to merge the two having-weapons-while-under-disability charges in the Cleveland Heights Case. Furthermore, the facts of the East Cleveland Case warrant merger of the two having-weapons-while-under-disability convictions in that case. Accordingly, the trial court erred when it failed to merge Counts 3 and 4 in the Cleveland Heights Case and when it failed to merge Counts 4 and 5 in the East Cleveland Case.

{¶ 87} We now turn to the four aggravated-vehicular-assault charges in the East Cleveland Case. Mitchell was charged with aggravated vehicular assault pursuant to R.C. 2903.08(A)(2)(b) in all four counts. Counts 6 and 7 included a

---

[2] Moreover, *see State v. King,* 2013-Ohio-2021, ¶ 34 (2d Dist.) (finding that the "simultaneous, undifferentiated possession of multiple weapons can constitute one act of having weapons while under disability" but "multiple convictions are appropriate if "'there is evidence that the weapons were stored in different places or acquired at different time.'") (citations omitted).

sentencing enhancement that increased the penalty from a felony of the fourth degree to a felony of the third degree if the offender was driving while under suspension at the time of the offense.

{¶ 88} Preliminarily, this court has found that "[w]here a defendant commits the same offense against different victims during the same course of conduct and the offense is defined in terms of conduct toward another," the crimes are of dissimilar import for each person. (Citations omitted.) *State v. Spock*, 2014-Ohio-606, ¶ 33 (8th Dist.); *see also, Ruff,* 2015-Ohio-995, at ¶ 26 ("When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts.").

{¶ 89} Therefore, the question here is limited to whether the counts involving the victim-mother should merge and separately whether the counts involving the victim-son should merge. In the instant case, Mitchell's actions stemmed from a single course of conduct. Further, his license suspension was a status, just like his disability, and thus predated the actions that comprise the offenses. His actions did not have dissimilar import or significance, because we cannot say that the count of aggravated vehicular assault with a license suspension and the count without the suspension caused separate, identifiable harm, nor were they committed separately, or with separate animus or motivation. *See Ruff* at ¶ 25. Accordingly, the trial court should have merged Counts 6 and 8 and Counts 7 and 9.

{¶ 90} Based on the foregoing, the first assignment of error is overruled with respect to the East Cleveland Case charges of failure-to-control, sustained on the

having-weapons-while-under-disability counts in the Cleveland Heights Case, sustained on the charges for having weapons while under disability in the East Cleveland Case, and sustained for the two aggravated-vehicular-assault counts in the East Cleveland Case for the victim-son, and for the two aggravated-vehicular-assault counts for the victim-mother. Accordingly, the sentences on those counts are vacated, and the case is remanded for the State to elect which charges they will proceed on and for the trial court to resentence Mitchell.

{¶ 91} Judgment affirmed in part, reversed in part, and remanded for resentencing.

It is ordered that costs herein taxed be split between the parties.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, A.J., and
MICHAEL JOHN RYAN, J., CONCUR